IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

STACY R. JOHNSON                                                                                                PLAINTIFF

v.                                                      Case No.: 4:07-cv-4068

JERRY CRANE, Hempstead County Sheriff;
LOUISE PHILLIPS, Hempstead County Jail Administrator                       DEFENDANTS

**MEMORANDUM OPINION**

Stacy Johnson (Plaintiff) filed this *pro se* civil rights action under 42 U.S.C. § 1983 on July 23, 2007. (Doc. 1). Plaintiff's Complaint was filed *in forma pauperis* (IFP) and certified to proceed on August 10, 2007. (Doc. 4). On November 8, 2007, Defendants' filed their Court-ordered Motion for Summary Judgment (Doc. 13), which is the issue now before the Court on consent of the parties. The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (Doc. 10). Pursuant to this authority, the Court issues this Order.

**I. Background**

Plaintiff's claims stem from the time he was incarcerated at the Hempstead County Detention Center. Plaintiff has sued Jerry Crane, Sheriff of Hempstead County, and Louise Phillips, the Jail Administrator, for denial of medical treatment. The Defendants are sued in both their personal and official capacities. Plaintiff alleges that on March 31, 2006, he injured his hand during an altercation with another inmate. (Doc. 25, ¶ 2). Plaintiff states his left hand was broken and his right thumb was dislocated. (Doc. 25, ¶ 4). On March 31, April 1, April 2, and April 3, 2006 Plaintiff states he filled out medical requests or grievances which were ignored or unanswered regarding his injury.

(Doc. 25, ¶ 10, ¶ 2). The exhibits produced by the Defendants do not reflect any medical requests or grievances by Plaintiff on these dates. (Doc. 14, Ex. 1-5). Plaintiff further alleges Defendant Phillips saw his hands on April 1, 2006, the day after the incident, when he was summoned to her office. (Doc. 25, ¶ 4). At the time Defendant Phillips saw his hands, Plaintiff's left hand was "swollen bad" and his "right thumb was crooked and swollen." (Doc. 25, ¶ 5). Moreover, he could not close either hand due to the severity of the swelling. *Id.* Plaintiff states that when he requested medical assistance he was "only met with threats of filing charges against me and put back in solitary confinement." (Doc. 1).

Plaintiff was released from Hempstead County Detention Center on April 4, 2006, four days after the incident. (Doc. 25, ¶ 5). He would return to the Detention Center about a month later, on May 4, 2006. *Id.* In the interim, Plaintiff went to see a pharmacist who told Plaintiff it had been five days since the injury "and that it was too late." (Doc. 25, ¶ 3). Plaintiff then bought a thumb brace. *Id.* Once Plaintiff was back in custody at the Hempstead County Detention Facility on May 4, 2006, he was given prompt medical attention regarding his hand. (Doc. 25, ¶ 9).

Plaintiff filed a grievance on May 16, 2006, stating that he was told a doctor had been called about his hand pain, and the doctor had said he could not do anything for it. (Doc. 14, Ex. 4). Plaintiff complained "what doctor worth the ink on his degree would diagnose me without seeking me." *Id.* Defendant Phillips responded that Dr. Goin's office had been called regarding Plaintiff's complaint, and that Lori Wreyford with that office stated that since the hand was hurt over a month ago there was not anything a doctor could do, it would be only for cosmetic purposes. *Id.* An X-ray of Plaintiff's hands was preformed on May 22, 2006. (Doc. 1). It showed no fracture or dislocation and the impression was "negative." (Doc. 14, Ex. 5).

Plaintiff made an inmate medical request on May 31, 2006 regarding pain his hands. (Doc. 1). The nurse noted Plaintiff's X-ray was negative and he was to be started on Naproxen for pain. Plaintiff contends that his hand was only evaluated by Laura Wreyford and Nurse Lori Jones on June 5, 2006, but "no one before then." (Doc. 25, ¶ 8).

No other medical documents are in the record before the Court, except for an inmate medical request dated June 1, 2007 where Plaintiff complains his "hands hurting bad. Back hurting. Foot hurting." (Doc. 14, Ex. 5). The nurse notes Plaintiff is to be restarted on Naproxen. *Id.*

Plaintiff states that Laura Wreyford told him he now suffers from carpel tunnel syndrome and arthritis, stemming from his original injury. (Doc. 25, ¶ 7). Plaintiff also states he did not have these problems before the incident. *Id.*

Defendant Crane did not see Plaintiff's hand. (Doc. 25, ¶ 6). Plaintiff indicates he sued Defendant Crane in order to sue Hempstead County as Defendant Crane is "in charge of Ms. Phillips and the County." *Id.*

**II. Discussion**

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56 (c). The court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Adkison v. G.D. Searle & Co.*, 971 F.2d 132, 134 (8th Cir.1992). The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### A. Official Capacity Claims

Plaintiff has sued Defendants in their official and personal capacities. Plaintiff's official capacity claims are tantamount to suing Hempstead County. Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). Because *Monell* specifically rejected liability based solely on *respondeat superior*, *id.* at 691, "[a] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir.1994). Rather, official-capacity liability must be based on deliberate indifference or tacit authorization. *Id.*

Policy or custom official-capacity liability is imposed by 42 U.S.C. § 1983 only for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell,* 436 U.S. at 690-91. The Eighth Circuit has upheld the grant of summary judgment because a plaintiff failed to plead that the defendant "had a policy or custom of false arrests or malicious prosecution." *Sanders v. Sears, Roebuck & Co.*, 984 F.3d 972, 976 (8th Cir. 1993).

Plaintiff clearly is suing Defendant Crane under a *respondeat superior* theory of liability only. He acknowledges Defendant Crane did not see his hand, and Defendant Crane was only sued in order to name Hempstead County in the suit. Moreover, Plaintiff provides no evidence that Defendant Crane made any medical decisions or that he kept Plaintiff from receiving medical attention or care. *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment);

*Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993) (section 1983 liability requires some personal involvement or responsibility). Because suing Defendant Crane in his official capacity is tantamount to suing Hempstead County, and Plaintiff does not allege any personal involvement of Defendant Crane, Defendants' Motion for Summary Judgment regarding Plaintiff's claims against Defendant Crane is **GRANTED**.

As stated above, Plaintiff's suit against Defendant Phillips in her official capacity is tantamount to suing Hempstead County. Plaintiff has provided copies of the Policies and Procedures of the Hempstead County Detention Center regarding medical care, but has offered no proof to support his allegation that these policies caused the alleged constitutional violations in this case. There is nothing in the Policy or Procedures noted by Plaintiff that would permit the denial of medical care. The policy provides for medical care to be given once the jail personnel are notified of the medical need. There is no proof that the alleged constitutional violations in this case were caused by an existing unconstitutional municipal policy. Further, Plaintiff's Complaint does not allege any custom or policy of Hempstead County which resulted in a violation of his constitutional rights. Therefore, Defendants' Motion for Summary Judgment regarding Plaintiff's official capacity claims is **GRANTED**.

### B. Individual Capacity Claims

In this circuit it is now settled law that deliberate indifference is the appropriate standard of culpability for all claims that detention center officials have denied inmates adequate medical care. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). This standard applies to both pretrial detainees and convicted defendants. *See id.* "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical

needs." *Estelle v. Gamble*, 429 U.S. 97 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

A broken hand and dislocated thumb would certainly rise to the level of a serious medical need. Given the facts pled by Plaintiff, Defendant Phillips had knowledge of Plaintiff's alleged need for medical attention because she saw his hand and because he wrote grievances/medical requests

regarding his injuries. The Court notes again that the only medical requests filed by the Plaintiff occurred after he was back in custody on May 4, 2006. *See* Doc. No. 14, Defendant's Brief in Support of Motion for Summary Judgment, Exs. "B", "C" and "E". Following those medical requests, Plaintiff was seen by the jail nurse or nurse practitioner and was given medical treatment.

However, Plaintiff has failed to offer any evidence that his hand was broken or thumb dislocated. Additionally, other than his own statement, Plaintiff has offered no evidence he suffers from carpel tunnel syndrome or arthritis. The X-rays taken of his hand showed no broken bones. Further, he has not offered any summary judgment proof that these injuries are a result of the alleged delay of medical care while in the custody of Hempstead County.

The Eighth Circuit Court of Appeals has held that, "when the inmate alleges that the delay in treatment is the constitutional deprivation, the objective seriousness of the deprivation should also be measured 'by reference to the *effect* of delay in treatment.'" *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (quoting *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1188 (11th Cir. 1994) (emphasis in *Hill* )). "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill,* 40 F.3d at 1188 (footnote omitted).

There is no medical evidence in the record showing Plaintiff was deprived of medical care. There is no summary judgement proof showing that he currently suffers from any injury to his hand, or that such an injury is related to the alleged delay or denial of medical care while incarcerated in Hempstead County Detention Center. Thus, summary judgment should be granted on Plaintiff's claims.

### III.  Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED** (Doc.  13) in its entirety.  Plaintiff's Complaint (Doc.  1) should be dismissed with prejudice.  A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**IT IS SO ORDERED** this **1st day of May 2008.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
U.S.  MAGISTRATE JUDGE